```
             IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division


BARRIE M. PETERSON,             )
                                )
      Appellant,                )
                                )
         v.                     )    CIVIL ACTION 1:05cv1498(JCC)
                                )
ROBERT O. TYLER, TRUSTEE,       )
et al.,                         )
                                )
      Appellees.                )
==============================)
                                )
In re: BARRIE M. PETERSON,      )    Case No. BR-01-11529-RGM
                                )    Chapter 11
      Debtor.                   )
```

## **M E M O R A N D U M   O P I N I O N**

This case is before the Court on an appeal from the Bankruptcy Court's Order Granting Motion to Authorize Implementing Plan Trustee's Chapter 7 Liquidation Powers (hereinafter "Default Order").

### I.  Background

The debtor, Barrie M. Peterson, filed for Chapter 11 bankruptcy protection in 2001.  On May 24, 2002, the case was converted to Chapter 7.  After the appointment of Robert O. Tyler as Trustee, the parties negotiated the reconversion of the case to Chapter 11, and the Trustee brokered a consensual plan of reorganization.  The parties involved in the negotiation included Peterson, Peterson's son, the Trustee, and Appellee C.F. Trust, a creditor with secured and unsecured claims.  The reorganization

plan provided, *inter alia*, that C.F. Trust would discount its secured claim against Peterson in the amount of $200,000 and that Peterson would lose the discount if he defaulted. The reorganization plan also provided for stringent default and enforcement mechanisms, leaving little discretion on the part of the Trustee to refrain from declaring default and commencing enforcement upon Peterson's failure to meet an obligation.

The reorganization plan preserved C.F. Trust's liens and interests in Peterson's property. These preserved interests included C.F. Trust's constructive trust on one-half the proceeds of a property known to the parties as Fortuna.[1] The reorganization plan also provided Peterson with the opportunity to dispose of Fortuna if Peterson substituted collateral of an equal or greater value through a like-kind exchange under § 1031 of the Internal Revenue Code. In the event Peterson carried out such a transaction, C.F. Trust's encumbrance would carry over to the new property for which Peterson exchanged.

Peterson sought to sell Fortuna in 2004. On June 1, 2004, upon the agreement of all parties, the Bankruptcy Court entered an Order authorizing the sale of Fortuna free and clear

---

[1] This Court imposed the constructive trust on the Fortuna property in an Opinion rendered by Judge Brinkema. *See C.F. Trust, Inc. v. Peterson*, No. 97-2003-A, 1999 U.S. Dist. LEXIS 22623 (E.D. Va. Jan. 8, 1999). The Court found that Peterson's conveyance of a one-half interest in Fortuna to his son was fraudulent, voided the conveyance, and established a constructive trust on that interest in favor of C.F. Trust. *Id.* at *33. The Court's Order provided that if and when Peterson sold the Fortuna property, the proceeds from the undivided one-half interest would be used to partially satisfy Peterson's obligations to C.F. Trust. *Id.* at *33-34.

of liens, claims, interests, and encumbrances.  *See In re Peterson*, No. 01-11529-RGM (Bankr. E.D. Va. June 1, 2004) (hereinafter "Fortuna Sale Order").  The Fortuna Sale Order provided that all such encumbrances and interests "attach with like force and effect to the proceeds of sale."  Fortuna Sale Order at 1.  While Peterson sought to use the proceeds from the Fortuna sale in an Internal Revenue Code § 1031 like-kind exchange, he could not identify any particular property for the exchange.  As such, the parties agreed to give Peterson the opportunity to avail himself of an IRS regulation that permits delayed like-kind exchanges where the seller deposits proceeds with a qualified intermediary in an exchange account and uses those proceeds to acquire substitute property within 180 days.  The Fortuna Sale Order incorporated the parties' agreement on this point as follows:

> 6.  The Court authorizes a transfer of the proceeds of sale to a qualified intermediary, subject to the following conditions: (a) the qualified intermediary must be approved by the Trustee; however, any federally insured depositary institution shall be deemed approved; (b) the qualified intermediary may only disburse the funds upon the request of the Debtor and with the written consent of the Trustee, and the Trustee shall not grant such consent unless C.F. Trust also consents if the disbursement would reduce the amount in the qualified intermediary's exchange account to less than $3,000,000.

Fortuna Sale Order at 3.

Peterson deposited approximately $7,500,000 with Wachovia as proceeds from the Fortuna sale.  In July 2004,

Peterson secured, with the Trustee's agreement, a $400,000 loan from Wachovia by pledging the funds in the Fortuna account as security for the loan.  The Trustee expressly conditioned his agreement to this transaction on the requirement that no funds could be withdrawn from the Fortuna account without the Trustee's written consent.  On January 26, 2005, Peterson requested the Trustee's consent to using Fortuna account funds to pay Peterson's $400,000 obligation to Wachovia.  The Trustee responded that he would not agree to such loan payments without a court order or C.F. Trust's consent.  After subsequent exchanges, the Trustee advised Peterson on May 25, 2005 that he found good grounds for the loan payoff and that he intended to support Peterson's motion for a court order allowing the requisite withdrawal from the Fortuna account.  The Trustee informed Peterson that such a motion could be set for hearing by June 14, 2005.  On June 1, 2005, however, Wachovia transferred $401,322.22 from Peterson's exchange account to satisfy Peterson's loan obligation.

In an October 5, 2005 hearing, the Bankruptcy Court found that Peterson was responsible for Wachovia's transfer of funds from the Fortuna account.  Based on this, and on a separate transfer,[2] the Bankruptcy Court found Peterson in default.  The

---

[2] The finding of default was separately based on Peterson's withdrawal of approximately $3.9 million without the unqualified consent of the Trustee. The Bankruptcy Court previously ruled that it retained jurisdiction over the Fortuna proceeds that had been disbursed from the Wachovia account and that it

Bankruptcy Court found that these defaults warranted the loss of Peterson's $200,000 payment discount on the secured claims of C.F. Trust, and on October 12, 2005, the Bankruptcy Court entered the Default Order, which provided for the immediate acceleration of all obligations due under the reorganization plan.  Peterson has appealed the Bankruptcy Court's decision finding him in default, disallowing the payment discount, and implementing the Plan Trustee's liquidation powers.  Peterson presents the following issues:

1. Whether the Bankruptcy Court erred in finding the Debtor in default under the confirmed Plan of Reorganization;

2. Whether the Bankruptcy Court erred in granting the Trustee's Motion to remedy plan default in respect of the Debtor's withdrawal of the Fortuna proceeds when the Trustee unconditionally consented to such withdrawals and thereby materially participated in the alleged default; and

3. Whether the Bankruptcy Court erred in finding the Debtor in default with regard to Wachovia's seizure of $401,322.22 in light of the fact that no evidence was presented regarding the circumstances of such seizure.

## II.  Standard of Review

A district court has jurisdiction over an appeal from a bankruptcy court pursuant to 28 U.S.C. § 158(a).  *See Educ. Credit Mgmt. Corp. v. Buchanan*, 276 B.R. 744, 749 (N.D. W. Va.

---

could therefore direct Peterson to provide information regarding the disposition of such proceeds.  The Bankruptcy Court's finding is the subject of a separate appeal before Judge Ellis.  Peterson concedes that if he does not prevail in his separate appeal, then he cannot prevail in the instant matter.

2002). A bankruptcy court's conclusions of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *See In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999). *See also* Fed. R. Bankr. P. 8013.

### III.  Analysis

The three issues presented by Peterson can be distilled to a single question regarding the Bankruptcy Court's factual findings:  whether the Bankruptcy Court was clearly erroneous in finding that Peterson bore responsibility for the transfer of $401,322.22 from the Fortuna account to satisfy the amount due on Peterson's personal loan to Wachovia.  A review of the evidence presented to the Bankruptcy Court reveals that it did not commit clear error.

The Bankruptcy Court considered a letter dated September 8, 2005 from Peterson to the Trustee, in which Peterson stated, "In conversations with me, you were told on several occasions that this money was going to be withdrawn from the account."  (Oct. 5, 2005 Hr'g Ex. 18.)  The Trustee and C.F. Trust interpret this letter as an admission by Peterson that he instructed Wachovia to effect the transfer.  Peterson disputes this interpretation, claiming that the letter revealed his concern that Wachovia would transfer the funds unilaterally.

This Court's responsibility in a bankruptcy appeal is not to choose between conflicting interpretations of the

evidence, but rather to determine whether the Bankruptcy Judge's findings of fact were clearly erroneous.  According to the Fourth Circuit, "the clear error standard may encompass a determination that the findings under review were induced by an erroneous view not supported by substantial evidence or made without properly taking into account substantial evidence to the contrary."  *People Helpers Foundation, Inc. v. City of Richmond*, 12 F.3d 1321, 1329 (4th Cir. 1993).

Although Peterson may offer a conflicting interpretation of the September 8, 2005 letter, in this Court's view, Peterson's letter provided substantial evidence to support the Bankruptcy Court's finding.  The letter as a whole provides a context that supports the Appellees' interpretation of Peterson's statement that the Trustee was "told on several occasions that this money was going to be withdrawn from the account."  Specifically, the letter states that the loan payoff amount was withdrawn from the Fortuna account because the interest rate Peterson paid on the loan balance was higher than the rate he received on the funds in the account.  This statement implies that the withdrawal was a rational, purposeful decision directed by Peterson rather than a unilateral act by Wachovia.[3]  In light

---

[3] A brief review of the history of litigation between these parties casts further doubt on the interpretation of the September 8, 2005 letter now offered to this Court by Peterson.  This Court and the Bankruptcy Court have found Peterson to be lacking in credibility on numerous occasions.  *See C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 140 F. Supp. 2d 628, 640-41 (E.D. Va. 2001) ("These past cases resulted in two findings of fraudulent conveyances

of the context, it is clear that the quoted statement was an admission by Peterson that he instructed Wachovia to effect the withdrawal to pay off the balance due on his personal loan.

Moreover, it does not appear that the Bankruptcy Court disregarded any substantial evidence. In Peterson's second assignment of error, he implies that the Trustee "unconditionally consented to such withdrawals and thereby materially participated in the alleged default." A review of the record reveals, however, that while the Trustee conceded that there were good grounds for the withdrawal of funds for a loan payoff, he insisted that Peterson obtain a court order or C.F. Trust's consent to do so. The Trustee offered to support Peterson if he requested a court order and informed Peterson that the Bankruptcy Court could hear the matter on June 14, 2005. Nevertheless, by June 1, Peterson had instructed Wachovia to effect the transfer. There is no evidence that the Trustee materially participated in the alleged default or that anyone other than Peterson bears responsibility for the withdrawal of funds from the Fortuna account. Accordingly, the Bankruptcy Court did not commit clear error in finding Peterson to be in breach based on the transfer of funds from the Fortuna account to pay off Peterson's loan obligation to Wachovia.

---

and three direct findings that Barrie Peterson had testified falsely."); *C.F. Trust, Inc. v. DEP, Inc.*, Adversary Proceeding No. 97-1017, 1997 Bankr. LEXIS 2383, *38 n.17 (Bankr. E.D. Va. Oct. 31, 1997) ("To put the matter charitably, truth is not the brightest star in Mr. Peterson's constellation . . . .").

**IV.  Conclusion**

        For the foregoing reasons, the Bankruptcy Court's Default Order is affirmed.  An appropriate Order will issue.


April 12, 2006                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE